**CHI–MIL CORPORATION, Plaintiff,**

**v.**

**W. T. GRANT COMPANY, a corporation, and Forest City Enterprises, Inc., Defendants.**

Civ. A. No. 74–C–507.

United States District Court,
E. D. Wisconsin.

Feb. 9, 1976.

Victor M. Harding and George E. Garvey, Milwaukee, Wis. and Bernard M. Mamet, Chicago, Ill., for plaintiff.

Eugene C. Daly and Richard H. Porter, Milwaukee, Wis., for defendant W. T. Grant Co.

Robert J. Loots, Clay R. Williams, and John W. Hein, Milwaukee, Wis., for defendant Forest City Enterprises, Inc.

## MEMORANDUM DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action by a lessor against his lessee and his lessee's assignee. Jurisdiction to hear the cause exists under the diversity provisions of 28 U.S.C. § 1332.

The lessor is Chi-Mil Corporation ("Chi-Mil"), the lessee is W. T. Grant Company ("Grant"), and the assignee is Forest City Enterprises, Inc. ("Forest City"). The lease in question covers certain commercial property located near the intersection of North 76th Street and West Acacia Street, Milwaukee, Wisconsin.

In order to understand the present posture of the proceedings, it will first be necessary to set forth at some length the facts of the case. On May 4, 1966, Chi-Mil and Grant entered into a lease and lease agreement covering the property in question, the lease agreement requiring Chi-Mil to construct a building thereon according to specifications submitted by Grant. Chi-Mil proceeded to obtain a construction loan from the State Farm Life Insurance Company ("State Farm") in the amount of $1,350,-000 and, to secure the loan, granted State Farm a first mortgage on the property. The building was constructed and Grant took possession of the premises. The initial lease term on the premises extended to 1988, with Grant thereafter having options to renew.

Under the terms of the lease agreement, Grant was entitled to sublet or assign the lease, but such subletting or assignment was to be without effect as to Grant's obligations under the lease. On February 14, 1974, Grant gave Chi-Mil written notice that it had assigned its interest under the lease agreement to Forest City, effective February 1, 1974. Grant vacated the premises sometime prior to the effective date of the assignment, and Forest City, without every occupying the premises, commenced paying the monthly rental due under the lease.

Forest City subsequently advised Chi-Mil that it intended to subdivide the building into several smaller stores and to thereafter sublease these smaller units to a nightclub owner, an automotive dealer, and several other sublessees who were not identified. On the basis of this information, Chi-Mil's president sent the following letter to Grant on May 20, 1974, a copy of which was sent to Forest City:

"During a recent telephone conversation, we were advised by your assignee, Forest City Enterprises, Inc., through its real estate representative, Mr. Ronald Markowitz, that it is their intention to convert the existing W. T. Grant store at the above captioned location into a number of smaller stores.

"This conversion would affect a vital and substantial portion of the leased premises, the fundamental purpose of its erection, the uses contemplated and a change of such a nature as would affect the very real estate itself, being extraordinary in scope and effect, and an unusual financial expenditure. Section 6(a) of the lease dated May 4, 1966, by and between Chi-Mil Corp. and the W. T. Grant Company, permits the tenant only to make non-structural alterations, additions and improvements to the premises. The reconstruction of the building contemplated by Forest City Enterprises would be in direct violation of Section 6(a).

"It is the intention of the landlord to enforce Section 6(a) of the above described lease by whatever means available under the terms of the lease. The Landlord shall hold the Tenant, The W. T. Grant Company, primarily liable for the actions of its assignee which are now or may be in violation of the terms and conditions of the aforesaid lease."

On May 23, 1974, Forest City's chief corporate counsel responded in a letter to Chi-Mil's president:

"Your copy of your letter of May 20, 1974, to W. T. Grant Company * * has been turned over to me for attention.

"It is my opinion that the projected action of Forest City Enterprises, Inc.

(Assignee) is not in violation of said Lease.

"Section 12 of said Lease permits the Tenant to not only use the premises for any lawful purpose but also to sublet all or any part of the premises or assign the Lease without any consent of the Landlord.

"Section 6(a) does not prevent the alteration, addition or improvement to said premises as long as the structural portions of the building are not affected. The Tenant can sublet and/or subdivide said premises without damage to the structural portions of the building.

"My client will take appropriate legal action against anyone causing loss of revenue or any other damage as a result of interference with their right to sublease or subdivide the above premises within the scope of the conditions of this Lease."

On June 23, 1974, Chi-Mil's president replied:

"We are in receipt of your letter of May 23, 1974, concerning the W. T. Grant store at Mill Road Shopping Center, Milwaukee, Wisconsin.

"Our letter of May 20, 1974, addressed to the W. T. Grant Company, a copy of which was sent to Forest City Enterprises, Inc., expresses our position concerning the contemplated conversion and remodeling program of the above captioned store."

Forest City made no further response to Chi-Mil's letter of June 23, 1974. Forest City continued to make rental payments on the premises until October 1974, when such payments ceased. Pursuant to Section 17(a) of the lease agreement, Chi-Mil gave written notice of the default in rent to both Grant and Forest City. After it became apparent that neither of the defendants intended to cure the rent default, Chi-Mil commenced the present proceedings against Grant and Forest City.

In its complaint, Chi-Mil requested that the Court direct the defendants to specifically perform those portions of the lease and lease agreement providing for the monthly payment of rent. Chi-Mil also requested an award of the damages and attorney's fees occasioned by the defendants' breach of the lease agreement.

Chi-Mil also moved for a temporary restraining order with respect to the payment of monthly rent. Chi-Mil alleged that the leased property was its only asset, and that rental payments therefrom constituted its only source of income. Chi-Mil further claimed that any delay in the receipt of rental income would lead to a default in payments due on the outstanding State Farm mortgage and a subsequent foreclosure by the mortgagee with an attendant loss of Chi-Mil's equity in the property. A hearing was held on Chi-Mil's motion, and the Court took the matter under advisement.

Thereafter, Grant answered Chi-Mil's complaint, and at the same time asserted a cross-claim against Forest City for the latter's violation of the assignment agreement. Forest City then answered the complaint and at the same time asserted a cross-claim against Grant, seeking a recission of the assignment agreement, and a counterclaim against Chi-Mil, alleging that Chi-Mil had itself violated the lease agreement.

Forest City's allegation of a breach of the lease agreement by Chi-Mil prompted Grant to give written notice of default to Chi-Mil on December 10, 1974:

"As you know, we represent W. T. Grant Co. which entered a lease agreement with Chi-Mil Corp. dated May 4, 1966 for certain premises at the Mill Road Shopping Center on North 76th Street and West Acacia Street, Milwaukee, Wisconsin. As you also know, our client assigned the lease to Forest City Enterprises, Inc. effective February 1, 1974. We understand that our client's assignee has been prevented from enjoying its rights under the lease by Chi-Mil Corporation's refusal to honor the lessor's covenants in that lease. As a result of this refusal, our client's assignee claims to have lost the benefit of the contract it assumed.

Forest City claims that Chi-Mil has breached sections 6, 12, and 15a of the lease agreement. These sections provide for alterations, subletting and quiet enjoyment at the subject premises. Lessor's breach of these sections, or any other part of the lease, constitutes a breach of the agreement between Chi-Mil Corp. and W. T. Grant Co.

"Our client knows of no legal right of Chi-Mil to obstruct full implementation of the lease. Frankly, the course of conduct you have followed raises several problems for our client in its dealings with Forest City. Naturally we seek to have your obstructions stopped so that the tenant can turn the premises into the profitable venture initially envisioned by everyone concerned.

"By the terms of the lease therefore demand is hereby made that Chi-Mil Corp. arrange within 45 days of receipt of this letter to remove any question of further interference by Chi-Mil with the lessee's rights as explicitly set forth in the lease. Your failure to comply with this demand must result in the termination of the lease agreement between Chi-Mil and W. T. Grant Company."

Chi-Mil's retained counsel replied the next day:

"This is in answer to your [letter] of December 10, 1974, * * *.

"By these letters you purport to give the 45 day notice provided for under Section 17(a) of the Lease Agreement, dated May 4, 1966, on the ground that Chi-Mil Corporation, as landlord under that Agreement, has refused to 'honor the lessor's covenants in that lease', specifically Sections 6, 12 and 15(a), providing for alterations, subletting and quiet enjoyment, and you demand that the landlord 'remove any question of further interference by Chi-Mil with the lessee's rights as explicitly set forth in the lease'.

"Please be advised * * * that the landlord, Chi-Mil Corporation, has never prevented either your client, Grant, nor its assignee, Forest City, from enjoying any rights under the above lease. We have repeatedly told both of you that you are at liberty to make non-structural alterations on the leased premises, as the Lease Agreement provides.

"If you believe otherwise, you have been misinformed, and this letter should remove any possible doubt as to whether there has been or will be any interference by Chi-Mil with the rights of the lessee under that lease."

On December 23, 1974, Grant supplied Forest City with copies of the preceding correspondence.

Subsequently, Chi-Mil moved for partial judgment on the pleadings with respect to the question of the defendants' obligation to make monthly payments of rent. Shortly thereafter, Grant moved for judgment on the pleadings with respect to its cross-motion against Forest City.

On January 30, 1975, Chi-Mil entered into an agreement with Grant whereby the latter agreed to pay the rent then owing and future rent as it became due, pending the outcome of this litigation. This same agreement provided that if the Court ultimately determined that Chi-Mil was not entitled to such rent, Chi-Mil would remit within thirty days all payments made by Grant.

On February 24, 1975, Chi-Mil, Grant, and Forest City entered into an agreement in an effort to preserve the property which was then standing vacant. In accordance with the agreement, Forest City hired a security guard to patrol the premises, and each party advanced one-third of the cost of needed temporary repairs.

On the basis of these agreements, Chi-Mil's counsel contacted the court and withdrew Chi-Mil's motion for a temporary restraining order.

On October 2, 1975, Grant filed a petition under Chapter XI of the Bankruptcy Act with the United States District Court for the Southern District of New

York. As a result of this occurrence, monthly rental payments under the January 30, 1975, agreement ceased. Forest City, in turn, informed Chi-Mil that Grant's financial status precluded further performance by Forest City under the terms of the agreement of February 14, 1975. Chi-Mil then moved this court for an order enforcing the interim agreements, citing the same circumstances of irreparable harm which were advanced in support of Chi-Mil's motion for a temporary restraining order.

■ There is some uncertainty with respect to the question of Grant's present posture in these proceedings, given that Grant has filed a Chapter XI petition. See Bankruptcy Rules 11–44 and 610. This issue, however, has not been directly addressed by the parties. In light of these circumstances, the Court does not deem it appropriate to take action with respect to any pending motions that might directly affect Grant. Accordingly, the Court will not pass on the merits of Chi-Mil's motion for partial judgment on the pleadings insofar as that motion concerns Chi-Mil's complaint against Grant. For similar reasons, the Court will not address Chi-Mil's motion for enforcement of the interim agreements to the extent that that motion relates to Grant. On a corresponding basis, the Court deems it inappropriate to act on Grant's motion for judgment on the pleadings with respect to Grant's cross-motion against Forest City.

The aforesaid considerations do not, however, preclude this Court from reaching the merits of Chi-Mil's motion for partial judgment on the pleadings insofar as that motion relates to Chi-Mil's complaint against Forest City. "A covenant to pay rent runs with the leasehold. Such a covenant clearly touches and concerns the land, so as to bind an assignee of the lease. * * * Moreover, an assignee may * * * expressly assume the lessee's covenants with respect to rent, and if he does, he is contractually liable therefor. It has been held that the assignee of a lease becomes, by virtue of the privity of estate and the covenant in the assignment to pay rent to the lessor according to the terms of the lease, the debtor of the lessor for installments of rent falling due after the assignment.

■ *"The lessor may sue at his election either the lessee,* if he is bound by an express covenant to pay rent, *or the assignee,* or both at the same time, although he can have but one satisfaction * * *."* 49 Am.Jur.2d, Landlord and Tenant § 459, at 455–456 (2d ed. 1970) (footnotes omitted; emphasis supplied). In the assignment of lease agreement subscribed to by Grant and Forest City, Forest City assumed and agreed to be bound by and perform "all of the terms, covenants and conditions of said Lease and Lease Agreement to be performed by the Tenant thereunder, effective January 15, 1974." Since Chi-Mil would have been free to sue Forest City separately, the Court's declination to act with respect to matters affecting Grant does not bar an adjudication on the merits of Chi-Mil's motion for partial judgment on the pleadings with respect to the complaint against the defendant Forest City.

As a preliminary matter, the Court must address certain procedural objections which Forest City has raised in opposition to Chi-Mil's motion for partial judgment on the pleadings. Chi-Mil's motion is "partial" in that the motion is addressed only to the question of the defendant's obligation to pay rent, Chi-Mil correctly realizing that the matter of damages will involve disputed factual issues as to the amount thereof. As to the question of Forest City's obligation to pay rent, the Court finds that the material facts are not in dispute. Although Forest City makes assertions to the contrary, the matters that Forest City disputes are either questions of law or questions of fact which are immaterial to the instant motion.

■ As a fallback position, Forest City asserts that a "partial" judgment on the pleadings is unknown under the Federal Rules of Civil Procedure. Although Rule

**358**

12(c) of the Federal Rules of Civil Procedure speaks of "judgment" on the pleadings and thus does not explicitly recognize a partial judgment thereon, Rule 54(b) of the Federal Rules is suggestive of a contrary conclusion:

> "When more than one claim for relief is presented in an action, * * * the court may direct the entry of a final judgment as to one or more but fewer than all of the claims * * *."

When considered in the context of the policy in favor of the expeditious disposition of matters where material facts are not disputed, see Rules 12(c) and 56, Rule 54's sanctioning of partial judgment on separate claims suggests that that partial judgment on the pleadings is a procedural option open to the federal courts.

■ This conclusion is buttressed by Rule 56(a) which provides that a party may move for summary judgment with respect to all of his claim or "any part thereof." In moving for partial judgment on the pleadings, Chi-Mil rests upon various documentary exhibits which were incorporated by reference into the pleadings in this case. See Rule 10(c). Although a motion for summary judgment may be made with or without supporting affidavits, see Rule 56(a), Forest City asserts that in the absence of affidavits, this Court is precluded from treating Chi-Mil's motion for partial judgment on the pleadings as a Rule 56 motion for summary judgment under the "transformation" provision of Rule 12(c):

> " * * * If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Although the record contains affidavits which have been "presented to and not excluded by the court," and it appears that all parties have had a "reasonable opportunity" to make an appropriate response, the Court will not rest upon these factors and treat the motion for partial judgment on the pleadings as one of summary judgment with respect to part of a claim. The Court instead relies on the fact that the interchangeability of Rule 12(c) and Rule 56 motions supports the conclusion that a judgment on the pleadings with respect to a part of a claim is implied by the parallel provision for partial summary judgment under Rule 56.

■ A final procedural point should be noted. In a motion for judgment on the pleadings, all well pleaded material allegations of the opposing party's pleadings are taken as true, and all allegations of the moving party which have been denied are taken as false. Conclusions of law are disregarded. The authenticity of the various documentary exhibits incorporated by reference into the pleadings has not been contested. To the extent that legal conclusions as to the construction and application of these documents have been asserted in the pleadings as matters of "fact," such "facts" have been disregarded as amounting to no more than conclusions of law. *Welles v. Sauber,* 142 F.Supp. 449 (N.D.Ill.1956).

Turning to the merits of Chi-Mil's motion, the Court will not attempt to summarize the various legal arguments made by each of the parties. The Court has found that the conclusion to be drawn from the pleadings in this case is neither indirect nor unclear. Despite that fact, or perhaps because of it, Forest City's counsel has gone to great lengths in attempting to muddy the waters of decision by interposing spurious legal claims. In failing to pursue or otherwise make mention of these interjections, the Court implicitly rules that they are without merit.

An adjudication of the merits of Chi-Mil's motion will necessitate reference to four sections of the May 4, 1966, lease agreement, which are set forth below:

> "The Tenant * * * may * * * make any *non-structural* alterations,

additions and improvements in, on and to \* \* \* the demised premises which it may deem necessary or desirable but it shall make them in a good and workmanlike manner \* \* \*. The Tenant may remove all or any part of any wall of any building standing on the demised premises to afford entrance to or connection with improvements on adjoining premises, and in the event of such removal of walls then, if requested in writing by the Landlord at least ninety (90) days before the expiration of the term, \* \* the Tenant at its expense shall restore said wall so far as practicable to its former condition. \* \* \* " (Emphasis added.) Section 6(a).

"The Tenant may use the premises for any lawful purpose. The Tenant may vacate or sublet all or any part of the demised premises or assign the lease but the Tenant shall not thereby be relieved of any liability hereunder." Section 12.

"The Landlord covenants, warrants and represents that \* \* \* the Tenant on paying the rent herein reserved and performing the covenants and agreements hereof shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto, during the full term of the lease \* \* \*. \* \* \* " Section 15(a).

"If any default of the Landlord hereunder shall continue uncorrected for forty-five (45) days *after notice thereof from the Tenant,* the lease may be terminated by the Tenant at any time thereafter during the continuance of such default *by giving notice* to the Landlord, but such remedy shall not be exclusive and Tenant does not hereby waive any other remedies it may have, in law or in equity. \* \* The Tenant may perform any obligation of the Landlord should the Landlord fail to do so promptly *after notice of default* and the Tenant may, but need not, make any replacements and

repairs of an urgent nature required to be made by the Landlord without first notifying the Landlord. The Landlord shall reimburse the Tenant for any expenditure thus incurred with interest at six per cent (6%) per annum. Any sums due the Tenant from the Landlord under the provisions of this lease or arising out of Landlord's failure to comply with or perform any of its terms may be deducted from rent, and such deduction shall not constitute a default unless Tenant shall fail to pay the amount of such deduction to the Landlord within thirty (30) days after final adjudication that such amount is owing to Landlord. \* \* " (Emphasis added.) Section 17(a).

The gist of Forest City's position is that in the previously cited exchange of correspondence between Chi-Mil and Forest City in May and June of 1974, Chi-Mil breached sections 6(a) and 12 of the lease agreement by denying that Forest City was entitled to subdivide and sublease the leasehold premises. In so doing, Forest City continues, Chi-Mil breached the covenant of quiet enjoyment contained in Section 15(a) of the agreement, and this breach amounted to a constructive eviction of Forest City. As a consequence, Forest City concludes, the lease was terminated or, in the alternative, Forest City was entitled under Section 17(a) to withhold from rent owing the damages sustained by Forest City as a result of Chi-Mil's breach.

■ An examination of the correspondence in question reveals that there was some disagreement between Chi-Mil and Forest City as to whether the actions which Forest City intended to take were permissible under the lease. While this disagreement over the applicability of certain provisions of the lease to the action contemplated by Forest City may well have been the cause of this litigation, it is a disagreement which need not be resolved by the Court in the present posture of the proceedings. This is not an action by Forest City for declaratory judgment, but rather an action by Chi-Mil for enforcement of the obligation to

359

pay rent. The only question relevant to the matter before the court is whether Forest City was justified in discontinuing rental payments as of October 1974.

■ Forest City's first position is that Chi-Mil's letter of May 20, 1974, amounted to a breach of the covenant of quiet enjoyment and a consequent constructive eviction. Forest City's position, however, cannot be sustained. " * * * [A]cts of the landlord, to constitute constructive eviction, must be of a grave and permanent character clearly indicating his intention to deprive the tenant of the beneficial enjoyment of the premises demised to him, to which the tenant yields, abandoning the possession within a reasonable time." 49 Am.Jur.2d, Landlord and Tenant § 301, at 316 (2d ed. 1970). It cannot fairly be said that Chi-Mil's letter of May 20, 1974, was of a grave and permanent nature, indicating Chi-Mil's intent to permanently deprive Forest City of beneficial enjoyment of the leasehold. To the contrary, Chi-Mil merely advised Forest City of its construction of the term "non-structural" as it is used in Section 6(a) of the lease agreement, and stated that it intended to enforce that provision of the lease. Forest City responded in kind by indicating that it held to a different interpretation of the lease, and that it too intended to see the lease enforced.

It should be emphasized that at the time at which these opinions were voiced, Forest City's plans were somewhat conjectural. No specifications or drawings were ever submitted to Chi-Mil, and it is thus uncertain whether the parties had in mind comparable conceptions of the nature and scope of the proposed alterations when each of them rendered their respective opinions. However, even if Chi-Mil wrongfully interpreted and construed the provisions of the lease in its letter of May 20, 1974, it does not follow that Forest City was justified in withholding rent.

■ Forest City claims that Section 17(a) authorizes the deduction from rent of sums due the tenant which arise out of the landlord's failure to comply with or perform any of the terms of the lease. From the context in which the language appears, an argument could be made to the effect that rent deductions are limited to costs incurred by the tenant in performing obligations of the landlord which the landlord has failed to promptly perform after notice of default. It is not necessary, however, for the Court to determine the nature of landlord breaches for which Section 17(a) provides a rent deduction remedy, for that section clearly requires that the tenant first give notice of default before proceeding to make any such deduction.

Forest City asserts that its letter of May 23, 1974, constituted such notice, but this assertion is unpersuasive. Forest City's letter does not specifically identify Chi-Mil's earlier letter as a default or describe it as such. Indeed, the last paragraph in that letter indicates that Forest City did not then consider Chi-Mil's letter a default, for the language used suggests that the only wrongful interference which the tenant then intended to resist was that arising in the future:

"My client will take appropriate legal action against anyone causing loss of revenue or any other damage as a result of interference with their right to sublease or subdivide the above premises within the scope of the conditions of this Lease."

The requirement of notice of default is not merely an empty form. Notice of default draws the landlord's attention to circumstances which the tenant believes to be in violation of the lease, warns the landlord that the tenant considers these circumstances to be of serious import, and gives the landlord an opportunity to correct the alleged deficiency. This function is illustrated by the exchange of correspondence which occurred between Grant and Chi-Mil on December 10 and 11, 1974.

In its initiating letter, Grant indicated that it considered Chi-Mil to be taking a position contrary to the terms of the lease and warned Chi-Mil that its failure to change its position would result in the

lease's termination. The next day Chi-Mil responded by making it clear that the tenant was at complete liberty to make nonstructural alterations on the leased premises.

It thus appears that the only notice of default ever given to Chi-Mil in this case was immediately followed by action constituting a complete cure of the alleged default. Forest City's failure to at any time give any notice of default is fatal to its contention that its withholding of rent was authorized by Section 17(a) of the lease agreement.

In the Court's opinion, the various letters exchanged among the parties to this action can be fairly read as indicating an agreement on the part of all involved that nonstructural alterations were permissible under the lease and that structural alterations were proscribed. For purposes of this decision, however, the Court can assume that Chi-Mil was the party in error, and yet nevertheless conclude that Forest City was unjustified in withholding rent. Default is not actionable in the absence of notice thereof, for Section 17(a) of the lease agreement makes notice of default a prerequisite of all remedies, be those remedies rent deduction, termination by notice, or other remedies the tenant may have at law or in equity.

The Court is not without sympathy for Forest City's position. Forest City originally intended to use the premises for purposes of housing a retail home improvement center. When those plans fell through, Forest City asked Chi-Mil to relieve it of its obligations under the lease. Chi-Mil refused, asserting that the lease had been assigned to State Farm as security for a mortgage, and that Chi-Mil could not cancel the lease without breaching the terms of that mortgage. In an attempt to salvage its position as lease assignee, Forest City then proposed to subdivide and sublease portions of the building. In response, Chi-Mil noted that structural alterations were prohibited by the lease. Thus blocked, Forest City was faced with ten years remaining on a lease for a building for which it had no use.

But the Court's sympathy for Forest City's position does not require that it overlook the contractual lease obligations which Forest City voluntarily assumed. These parties were each represented by able counsel, and the documents in question were drafted with skill. In such circumstances, the Court will not hesitate to enforce the clear and precise terms of the bargain.

Given that Chi-Mil has succeeded on its motion for partial judgment on the pleadings with respect to the complaint against Forest City, the Court concludes that Chi-Mil's motion for enforcement of interim agreements is moot insofar as that motion relates to Forest City.

For the foregoing reasons,

It is ordered that the plaintiff's motion for partial judgment on the pleadings is granted as to defendant Forest City Enterprises, Inc.

It is further ordered that the plaintiff's motion for enforcement of interim agreements is dismissed as moot to the extent that said motion relates to defendant Forest City Enterprises, Inc.