ERVING PAPER MILLS CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1768–77.     Filed May 14, 1979.

*Roger A. Pies* and *Bradley S. Waterman,* for the petitioner.
*Daniel P. Ehrenreich,* for the respondent.

---

OPINION

SIMPSON, *Judge:* This proceeding involves the petitioner's motion for partial judgment on the pleadings.[1] At this time, the only issue for decision is whether property, the construction of which commenced prior to April 19, 1969, is ineligible for the investment credit because of section 49, I.R.C. 1954.[2]

In his notice of deficiency, the Commissioner determined a deficiency of $31,223.29 in the petitioner's Federal income tax for 1971. In such notice, the Commissioner determined that the investment credit claimed by the petitioner on its 1971 corporate income tax return far exceeded the credit to which it was entitled. In its petition to this Court, the petitioner contested the Commissioner's determination, claimed a substantial overpayment of tax, and alleged, inter alia, as follows:

5. The facts upon which Petitioner relies as the basis of its case are as follows:

(a) The Petitioner is a corporation organized under the laws of the State of Massachusetts on or about 1905.

(b) Petitioner is engaged in the manufacture and sale of paper and paper products.

(c) Petitioner's principal operations are conducted in Erving, Massachusetts, and consist of facilities which produce finished paper and paper products from raw pulp.

(d) On or before April 18, 1969, Petitioner adopted a plan ("the Plan") to enlarge its production capacity at its facilities in Erving, Massachusetts.

(e) The Plan provided for the design and construction of an addition to Petitioner's existing facilities at Erving, Massachusetts, consisting of a paper processing machine with supporting stock preparation, stock screening, water chest, filter system, and power controls ("Paper Processing Machine") and a structure to house this Machine (such structure and Paper Processing Machine referred to as the "Paper Processing Facility").

\* \* \* \* \* \* \*

(g) Pursuant to the Plan, Petitioner completed construction of the structure and the Paper Processing Machine and placed the Paper Processing Facility in service in September, 1971.

---

[1]This case involves several issues, and the petitioner is moving for a judgment on the pleadings as to one of the issues. Rule 120, Tax Court Rules of Practice and Procedure, contains no express provision for a partial judgment on the pleadings. However, the parties have advised the Court that they may be able to settle the other issues in the case after a decision on the legal issue raised by such motion. Under the circumstances, there is no apparent reason for refusing to consider a motion for a partial judgment on the pleadings, and in fact, the policy in favor of the expeditious disposition of cases favors such procedure. *Chi-Mil Corp. v. W. T. Grant Co.*, 70 F.R.D. 352, 357–358 (E.D. Wis. 1976), amended on another issue 422 F. Supp. 46 (E.D. Wis. 1976).

[2]All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated.

(h) The basis of the Paper Processing Machine was $3,291,087.92 on the date such machine was first placed in service.

(i) The basis of that portion of the Paper Processing Facility exclusive of the Paper Processing Machine was $456, 489.61 on the date such property was first placed in service.

(j) The Paper Processing Machine constituted new tangible personal property, or other tangible property used as an integral part of manufacturing, construction or extraction, with respect to which depreciation is allowable and having a useful life of seven years or more, at the time such Machine was placed in service.

*    *    *    *    *    *    *

(m) Petitioner commenced construction before April 19, 1969, of both the Paper Processing Machine and the structure to house such Machine.

In his answer, the Commissioner admitted each of such allegations.

Based upon such pleadings, the petitioner filed its motion for partial judgment on the pleadings asking us to hold that it is entitled to an investment credit equal to 7 percent of the $3,291,087.92 basis of the "paper processing machine." Generally, section 38 provides a tax credit for the purchase of certain depreciable property. Under section 46(a), the amount of the credit for the taxable year is generally equal to 7 percent of the "qualified investment." Section 46(c) defines qualified investment as the basis, in whole or in part, of new or used "section 38 property." Section 48(a) generally defines section 38 property to mean tangible personal property and "other tangible property (not including a building and its structural components)."

The outcome in this case turns on the meaning of section 49(a), which provides:

(a) GENERAL RULE.—For purposes of this subpart, the term "section 38 property" does not include property—
    (1) the physical construction, reconstruction, or erection of which is begun after April 18, 1969, or
    (2) which is acquired by the taxpayer after April 18, 1969,
other than pre-termination property.

Section 49(b), inter alia, describes various categories of pre-termination property. It is the petitioner's position that section 49 does not apply to property the construction of which commenced prior to April 19, 1969. On the other hand, it is the Commissioner's position that section 49(a) and (b) must be read together to determine if property qualifies for the investment credit. According to him, if property is acquired after the

termination date or if its construction is completed after such date, it is eligible for the investment credit only if it is pre-termination property under section 49(b).

The investment credit was first enacted as part of the Revenue Act of 1962, Pub. L. 87–834, sec. 2, 76 Stat. 963–973. Its purpose was to stimulate economic growth by providing the business community with an immediate inducement to invest in plants and equipment. S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 716–719; H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 411–420. However, by 1966, the country was experiencing inflation. To reduce inflation and to attain a more moderate pace of economic growth, the investment credit was suspended for "the period beginning on October 10, 1966, and ending on December 31, 1967." Act of Nov. 8, 1966, Pub. L. 89–800, sec. 2, 80 Stat. 1514. However, because the inflationary trend was abated, Congress restored the investment credit as of March 9, 1967. Act of June 13, 1967, Pub. L. 90–26, sec. 4, 81 Stat. 58; S. Rept. 79, 90th Cong., 1st Sess. (1967), 1967–2 C.B. 520–533; H. Rept. 131, 90th Cong., 1st Sess. (1967), 1967–2 C.B. 509–520.

By 1969, the country was again facing serious economic problems. Rampant inflation had combined with high unemployment and with a problem in the balance of payments. Congress moved to take corrective measures to combat such problems. One such measure was to end the investment credit. After considering the relative merits of suspending or terminating the investment credit, Congress decided to terminate it. However, the method of terminating the credit in transitional situations raised difficult issues. Investment decisions had been made, in part, on the availability of the credit. To the extent a taxpayer had made a substantial economic commitment in reliance on the credit, it would be inequitable to eliminate such credit. At the same time, Congress recognized that a line had to be drawn at some point during the planning-commitment process leading to investment, and to a certain extent, any line would be somewhat arbitrary and unsatisfactory. Balancing the various considerations, Congress terminated the investment credit after April 18, 1969, but at the same time, Congress recognized that in some situations where property was acquired or constructed after such date, it would be inequitable to deny such credit because of the taxpayer's existing economic commitment to an investment.

S. Rept. 91–552 (1969), 1969–3 C.B. 423, 564–566; H. Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 311–312.[3]

In describing section 49, the committee report stated:

The bill provides that the investment credit is not to be available with respect to property, the physical construction, reconstruction, or erection of which is begun after April 18, 1969, or which is acquired by the taxpayer after that date. As a result, the investment credit is not to be available for property acquired after April 18, 1969, by a taxpayer even though the construction of the property began before that date. The bill also provides certain exceptions to this general rule under which the investment credit is to be available in the case of property which is constructed (reconstructed or erected) or acquired under a binding contract entered into before April 19, 1969, or in other transitional situations which are discussed below. The binding contract rule and other transition rules provided in the bill are in general the same as the rules provided by Congress in 1966 in connection with the suspension of the investment credit. [H. Rept. 91–413, *supra* at 312.]

For a similar statement, see S. Rept. 91–552, *supra* at 566.

To carry out the legislative purpose, section 49(a) denies the investment credit for property acquired by a taxpayer after April 18, 1969, or for property the construction of which was commenced by the taxpayer after such date. If property which is otherwise eligible for the investment credit was acquired on or before such date or if the taxpayer commenced the construction of such property on or before such date, section 49(a) does not apply to such property, and it is eligible for the investment credit even though the construction of such property is not completed until after such date.

Section 49(a) also provides that property acquired or constructed after the termination date may nevertheless qualify for the investment credit if such property is "pre-termination property" under section 49(b). Section 49(b) describes four situations in which property is acquired after the termination date or in which the construction of the property begins after the termination date, but in each of such situations, it would be inequitable to deny the credit because of the economic commitment made by the taxpayer prior to the cutoff date. For example, the binding contract rule of section 49(b)(1) provides, in effect, that even though the property is not constructed, etc., or acquired before April 19, 1969, it is eligible for the investment

---

[3] All page references to S. Rept. 91–552 and H. Rept. 91–413 are to the pages in the Cumulative Bulletin where such reports are published.

credit if it was constructed or aquired pursuant to a contract that was binding on the taxpayer at the close of April 18, 1969, and at all times thereafter. S. Rept. 91–552, *supra* at 568–570; H. Rept. 91–413, *supra* at 314–315; *Sartori v. Commissioner*, 66 T.C. 680 (1976).

The equipped building rule of section 49(b)(2) provides an equitable rule where the taxpayer makes a substantial economic commitment to construct and equip a building prior to the cutoff date, but fails to acquire, construct, or enter a binding contract with respect to some or all of the equipment prior to the cutoff date. According to H. Rept. 91–413, *supra* at 315–316, the equipped building rule provides:

that where construction on a building has begun, before April 19, 1969, and the cost of the building plus any machinery and equipment for it which has been ordered (under a binding contract) or constructed before April 19, 1969, represents more than half of the entire cost of the building and planned equipment, the entire equipped building project and incidental appurtenances are to be eligible for the investment credit to the extent they would otherwise qualify for the credit. Where the costs incurred before April 19, 1969, do not equal more than half the cost of the equipped building, each item of machinery and equipment is to be treated separately (as provided in existing law) for purposes of determining whether the item qualifies for the investment credit.

For a similar statement, see S. Rept. 91–552, *supra* at 570.

The plant facility rule of section 49(b)(3) is similar to the equipped building rule, except that there is no building involved, i.e., the entire plant facility may qualify as section 38 property. Again, the situation is one in which all of the component parts of the plant facility would ordinarily qualify as section 38 property, except that some of them were not constructed, acquired, or under binding contract by the cutoff date. The solution devised by Congress is as follows:

The plant facility provision provides, in effect, two rules. The first of these rules is applicable where construction of the facility at the site had not commenced on April 18, 1969. The second rule covers the situation where such construction had commenced.

Under the first rule, if a taxpayer, pursuant to a plan in existence on April 18, 1969, constructed, reconstructed, or erected a plant facility (or portion thereof) and more than 50 percent of the aggregate adjusted basis of the depreciable property which makes up the facility is attributable to either (1) property the construction, reconstruction, or erection of which was begun by the taxpayer before April 19, 1969, or (2) property the acquisition of which by the taxpayer occurred before that date, then all property of the type which is

generally eligible for the investment credit which makes up the facility is to continue to be eligible for the credit. * * *

*       *       *       *       *       *       *

The second rule of the plant facility provision relates to the construction, reconstruction, or erection of a plant facility which was commenced before April 19, 1969. Under this rule, if pursuant to a plan of a taxpayer in existence on April 18, 1969, the taxpayer constructed, reconstructed, or erected a plant facility, and the construction, etc., was commenced before April 19, 1969, then all property of the type which is generally eligible for the investment credit which makes up the facility is to continue to be eligible for the credit. For this purpose, construction, etc., of a plant facility is not to be considered to have commenced until it has commenced at the site of the plant facility. * * * [H. Rept. 91–413, *supra* at 317.]

For a similar statement, see S. Rept. 91–552, *supra* at 571–572.

Finally, the machinery and equipment rule of section 49(b)(4) equitably resolves the situation where on April 18, 1969, a taxpayer held, or acquired pursuant to a binding contract, more than 50 percent of the component parts of a piece of machinery or equipment for inclusion or use in such machinery or equipment. In such situation, the machinery and equipment rule provides that the entire machine or equipment qualifies for the investment credit.[4]

The few decided cases in this area lend support to our understanding of the operation of the provisions of section 49. For example, in both *Sunbury Textile Mills v. Commissioner*, 68 T.C. 528 (1977), revd. on another issue 585 F.2d 1190 (3d Cir. 1978), and *Sartori v. Commissioner, supra,* the issue was whether a contract was a binding contract within the meaning of section 49(b)(1). During the course of discussing the general statutory framework, the Court in *Sunbury* stated "Section 49(a) denies the investment credit to property acquired by the taxpayer after April 18, 1969, unless the property is 'pre-termination property.'" (68 T.C. at 537; fn. ref. omitted.) Similarly, in *Sartori*, we stated:

Since the Marion 7400 dragline at issue herein was not actually acquired by Willowbrook until December 28, 1970, well after the April 18, 1969, cutoff date specified in section 49, section 49(a)(2) operates to disallow any investment credit in respect of the dragline (which the parties agree would otherwise constitute section 38 property) unless the dragline qualifies as pre-termination property under section 49(b)(1). * * * [66 T.C. at 686.]

---

[4]Based on the legislative history, the petitioner argued the rule also applied to partially constructed equipment or machinery. However, such issue is not before us, and we express no opinion regarding it.

In *Walt Disney Productions v. United States*, an unreported case (C.D. Cal. 1975, 36 AFTR2d 75–6327, 75–2 USTC par. 9824), affd. on this issue 549 F.2d 576 (9th Cir. 1976), it was held that films, the construction of which commenced before April 19, 1969, were eligible for the investment credit. During the course of the opinion, the District Court noted that because of its decision, it was unnecessary to decide whether the films were pre-termination property under section 49(b). In a similar case dealing with the identical issue under the 1966 suspension of the investment credit, the District Court in *Hanna Barbera Productions, Inc. v. United States*, an unreported case (C.D. Cal. 1977, 39 AFTR2d 77–1169, 77–1 USTC par. 9365), held that films, the construction of which commenced prior to the date the investment credit was suspended, were eligible for the investment credit without regard to the binding contract and other transitional rules.

In summary, based on the clear and unambiguous meaning of section 49(a), the evident statutory scheme of section 49(a) and (b), the legislative history, and the available case law, we hold that the petitioner is entitled to the investment credit on any machine the construction of which was begun by it prior to April 19, 1969.[5]

*An appropriate order will be issued.*

---

[5]The petitioner apparently concludes that there is only one machine (a "paper processing machine") involved in this case. However, we do not decide at this time whether the "paper processing machine" is an integrated machine or whether it is composed of several independent machines, each of which must qualify for the credit.